# January Term, 1909.

[No. 5648.]

## Mulford v. The Torrey Exploration Company.

1. **Statutes—Construed**—A statute prohibiting the use, by a corporation, of any of its funds for the purchase of its own stock, does not prohibit an agreement, in the sale of treasury stock, that the purchaser may return it, and receive back the consideration paid, within a stipulated time.—(85)

2. **Corporations — Contracts — Ultra Vires —** A corporation may, notwithstanding the provisions of Mills' Ann. Stats., § 485, effectually agree that one purchasing treasury stock may, within a specified time, return the stock and be repaid the price of it. —(85)

A corporation which has received and retains the fruits of an act merely unauthorized, will not be heard to deny liability. —(85, 86)

Where a single contract consists of mutual promises, each the consideration of the other, the corporation will not be permitted to object that those stipulations which are in its favor are valid, and the others void. It must stand upon the contract as a whole or repudiate it as a whole.—(86)

3. **Principal and Agent—Powers of Agent**—The by-law of a corporation that the manager may enter into "any contract for the benefit of the company," authorizes a sale of treasury stock with the condition that the purchaser may rescind within a stipulated time.—(86)

4. **Ratification**—The principal adopting a contract in part, affirms it as a whole.—(86)

5. **Corporations — Treasury Stock —** A corporation may dispose of its treasury stock upon such terms as it may see fit. It is not under duty to treat all purchasers alike.—(87)

6. **Evidence—Parol to Vary Writings**—An offer made to a corporation to purchase a certain number of shares at a price named, subscribed only by the party making it, is not and does not purport to be a completed contract. Oral evidence of a previous agreement that the purchaser may return the stock and receive the price, is admissible.—(88)

6                                              (81)

7. Action—Premature—Party who voluntarily incapacitates himself from the performance of his contract is liable to an action at once, though by the contract he is allowed a later date to perform.—(89)

8. Statute of Frauds — Sale of Goods — The clause of the statute requiring a memorandum of every contract for the sale of goods for the price of fifty dollars, or more, does not invalidate an oral contract by which, in consideration of the purchase of certain shares in the capital stock of a corporation, the purchaser is allowed to return it within a specified time and have return of the price paid.—(90)

*Appeal from Denver District Court*—Hon. JOHN I. MULLINS, Judge.

Mr. JOHN T. JACOBS, for appellant.

Mr. J. E. ROBINSON, for appellee.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Appellant, plaintiff below, commenced an action against the appellee, as defendant. In his complaint he set up two causes of action. In the first it was alleged in substance that George L. Torrey was the general manager of the defendant company, with full power to enter into contracts on its behalf; that on the 23rd day of January, 1904, he entered into an oral contract with the defendant, through its manager, to purchase fifty shares of the capital stock of the company by paying therefor twenty-five thousand shares of the capital stock of the Omar Gold Mining and Tunnel Company, and his promissory note for $1,250.00, due and payable six months after date, with interest at seven per cent. per annum, with the understanding and agreement that he was to have the privilege at any time within six months from the date of the transaction of returning the stock to the company, and having his Omar stock and promissory note returned to him; that on or about the 15th day of June following the transaction he notified the de-

fendant that he desired to exercise his right under his contract of purchase, and tendered to it the fifty shares of stock and requested the defendant to return to him his note and Omar stock; that prior to the maturity of his note, the defendant, for a valuable consideration, sold and transferred it to a *bona fide* purchaser; that he was compelled to pay the note to this purchaser, and that notwithstanding the agreement of the company it has failed and refused to return his Omar stock. Plaintiff further alleges that by reason of being compelled to pay his note he has been damaged in the sum of $1,305.00, and that the reasonable cash market value of his Omar stock is $500.00, and prays judgment accordingly.

By his second cause of action plaintiff alleged in substance the relation of Torrey to the company, and his authority to contract on its behalf, as stated in his first cause of action; that on the 19th day of March, 1904, he entered into a written contract with the defendant through Torrey, its manager, to purchase forty shares of the capital stock of the company by paying therefor twenty thousand shares of the capital stock of the Omar Gold Mining and Tunnel Company, and his promissory note for the sum of $1,000.00, dated March 19, 1904, due six months after date, with interest at seven per cent., upon condition that if at any time within six months from the date of the transaction he did not desire twenty shares of the stock so purchased, that the company would cancel and return his promissory note; that thereafter and on the 12th of September, 1904, he duly notified the defendant that he desired to exercise his right under his contract to return twenty shares of the stock transferred to him, and have his note canceled and returned, and tendered to the company the stock with the dividends thereon which had been paid to him; that the company negotiated and

sold his note before maturity for a valuable consideration to a *bona fide* purchaser, whereby he was compelled to pay the same, amounting with interest to the sum of $1,035.00, and prays judgment for this sum, with interest.

The defenses interposed by defendant were to the effect (1) that the contracts upon which plaintiff bases his cause of action were *ultra vires* and in violation of the statutes of this state; (2) that the general manager had no authority to make such contracts; (3) that the contracts were void as being a fraud on other stockholders; (4) that the oral contract upon which plaintiff relied, as set out in his first cause of action, was void because it varied the terms of a written contract; (5) that suit on the second cause of action was prematurely begun; (6) that the contract set out in the first cause of action was void under the statute of frauds.

To these defenses plaintiff replied that the defendant was estopped from interposing them because of its silence, acquiescence, ratification, and receipt and retention of the benefits and considerations which it acquired by virtue of the contracts set out in the complaint.

Judgment was entered for the defendant, and plaintiff brings the case here for review on appeal.

The testimony established beyond dispute that at the time of the transaction mentioned in the first cause of action, plaintiff and defendant orally agreed that the former might return the stock purchased at any time within six months, and that upon such return his Omar stock and his promissory note would be returned to him.

With respect to the second cause of action the testimony establishes a written contract between the parties substantially as stated in the complaint.

It further appears that plaintiff, within the time

fixed in his agreements, tendered to the company the stock transferred to him, and demanded the return of his Omar stock and promissory note; that his Omar stock has not been returned; that the defendant negotiated and sold the promissory notes of plaintiff before maturity, and that he has paid them to the purchasers thereof. The stock involved in the transactions was the treasury stock of the company. We shall consider the several defenses noted in connection with such further facts established at the trial as are relevant.

The statute upon which the defense is based, to the effect that the contracts in question are in violation of the statutes of the state, is as follows:

"It shall not be lawful for such corporations to use any of their funds for the purchase of stock in their own company or corporation, except such as may be forfeited for the non-payment of assessments thereon, except as hereinafter provided."—§ 485, 1 Mills' Ann. Stats.

This statute does not apply. The company desired to sell its treasury stock. It received the consideration agreed upon therefor. The plaintiff only purchased upon the condition that he should have the right to return the stock and have the consideration which he gave therefor returned to him. There was but one contract, namely, for the sale and repurchase of the stock, each object being a consideration for the other. The sale was, therefore, conditional. Such a transaction is not prohibited by the statute.—10 Cyc. 416; *Vent v. Duluth C. & S. Co.,* 67 N. W. (Minn.) 70; *Browne v. St. Paul Plow Works,* 64 N. W. (Minn.) 66; *Porter v. Plymouth G. M. Co.,* 74 Pac. (Mont.) 938.

If, however, it could be successfully contended that the contracts in question are *ultra vires,* then the defendant cannot escape liability thereon for the rea-

son that where a corporation reaps and retains the fruits of an act which is merely unauthorized, it will not be permitted to interpose the defense of *ultra vires.—American Nat'l Bank v. Hammond,* 25 Colo. 367.

Counsel for appellee contends that the contracts are divisible and that those parts which relate to the sale of the stock are valid, while so much of the respective contracts as bind the company to repurchase is invalid. We have already pointed out that the contracts cannot be divided because each object therein is a consideration for the other. The company, therefore, must stand by the contract as a whole or repudiate it as a whole. A corporation will not be permitted to retain the benefits resulting from that part of a contract which it affirms is legal and escape the burden imposed by that part of the same contract which it asserts is *ultra vires.—Vent v. Duluth C. & S. Co., supra; Porter v. Plymouth G. M. Co., supra.*

The defense that Manager Torrey had no authority to enter into the contracts is clearly without merit. The by-laws of the company provide that the manager "shall have power to enter into any contract for the benefit of the company." Aside from the question of the antecedent authority of the manager, the company is not in a position to assert that he was not clothed with such authority. It appears that the president of the company was fully advised with respect to the contracts and their conditions. The company has elected to affirm the parts of such contracts relating to the sale of the stock by retaining the consideration therefor, but repudiates the conditions upon which such sale was made. A principal cannot affirm an alleged unauthorized contract in part and disaffirm the remainder.—*Witcher v. Gibson,* 15 Col. App. 163.

In support of the defense that the contracts sued upon constitute a fraud upon other stockholders, two grounds are assigned:

(1) The funds realized from the sale of stock of the company constitute one of its assets, and therefore an agreement to apply such funds to the repurchase of stock misleads the stockholders and creditors of the corporation with respect to its assets; and (2) subscribers to stock of a corporation must be treated equally.

The first is without merit. Had the officers of the defendant caused the records of the company to show the true nature of the transaction with plaintiff, neither stockholders nor creditors could be misled. This is a matter over which the plaintiff had no control, and, therefore, he is not responsible for the failure of the officers, nor can he be prejudiced because of their neglect to do their duty.

Whatever the rule may be with respect to the claim that all subscriptions to the stock of a corporation must be on the same basis, and that any agreement by which a subscriber obtains an advantage over other subscribers, renders the contract of subscription invalid, it is not involved. The stock involved in the transaction between the parties was treasury stock held by the company for the purpose of sale. Plaintiff was not a subscriber for this stock, but a conditional purchaser of property of the corporation which it had the power to dispose of upon such terms as it saw fit.—*Porter v. Plymouth G. M. Co., supra.*

The oral agreement set out in the first cause of action was entered into before the transaction was consummated. Contemporaneously with the delivery of the stock plaintiff executed and delivered the defendant the following:

"GENTLEMEN:—I hereby subscribe for fifty shares of The Torrey Exploration Company stock, par value $50.00 per share, full paid and non-assessible, at the price of $50.00 per share, for which please find enclosed twenty-five hundred dollars, payment in full per month.

"C. H. MULFORD,

"Greeley, Colorado."

On behalf of appellee it is urged that this writing evidences the contract between the parties, and that any prior or contemporaneous oral agreement or understanding is not competent to contradict its terms. The rule invoked does not apply. Where a writing signed by one party only does not purport to be a completed contract, or it is apparent that it is not, and relates to matters not necessary to be in writing, parol evidence is permissible to establish so much of the contract as was not reduced to writing.— *St. L. L. & W. Ry. Co. v. Maddox,* 18 Kan. 546; *Tocci v. Arata,* 12 N. Y. Supp. 287; *Seguine v. Spaeth,* 35 N. Y. Supp. 847; *Smith v. Hildenbrand,* 36 N. Y. Supp. 485; *Smith v. Coleman,* 77 Wis. 343.

The writing signed by plaintiff did not purport to contain any contract on the part of the defendant. It was not binding upon either party until accepted by the company. The transaction could have rested entirely in parol. It was only evidenced in part by the writing signed by plaintiff; hence, it was competent to show by parol the agreement on the part of the defendant.

The contract sued upon in the second cause of action bore date March 19, 1904. Thereby the defendant agreed with plaintiff that at the end of six months his note would be returned and canceled if at that time he desired to return twenty shares of the Exploration stock. Suit was begun for a breach of

this contract September 15, 1904, or four days before the expiration of the full period of six months; and it is, therefore, argued on behalf of the appellee that the suit was prematurely brought. The general rule is that where, by an agreement, an act is to be performed on a future day, no action can be maintained for a breach of the agreement until the day for performing the act has arrived; but to this rule there are exceptions, as where a party stipulates to perform a specific act by a specific date, voluntarily does that which renders specific performance upon his part impossible, there is a breach of the contract upon which an action may at once be maintained.—*Fox v. Kitton,* 19 Ill. 519; *Lee v. Pennington,* 7 Ill. App. 247; *Cassidy Bros. v. Elk Grove Land Co.,* 58 Ill. App. 39; *Heard v. Bowers,* 40 Mass. 455; *Bowles v. Sachs,* 37 Minn. 315.

This exception rules the case at bar. The defendant agreed to return plaintiff's note on the 19th of September, 1904, if he elected to return twenty shares of the Exploration stock. Prior to the date suit was commenced, the defendant became insolvent, and voluntarily transferred this note, so that by its own act it placed itself in a position which rendered it impossible to perform its agreement. In such circumstances it cannot complain that suit for breach of its agreement was commenced four days prior to the date fixed for the performance of an act which, by its own action, it appears that it was impossible for it to perform.

Subdivision 4 of § 2025, Mills' Ann. Stats., provides, in substance, that every contract for the sale of goods, for the price of fifty dollars or more, shall be void unless a memorandum of such contract be made in writing and subscribed by the party to be charged therewith, or unless the purchaser shall accept and receive part of such goods, or unless the

vendee shall, at the time of purchase, pay some part of the purchase money. This statute does not render the agreement on the part of the defendant as set out in the first cause of action, to retake the stock and deliver plaintiff his note, invalid, even upon the assumption that a promise to sell stock in a corporation is within the statute. This was not an independent agreement of the defendant; on the contrary, as we have already pointed out, there was but one contract between the parties, namely, for the sale and repurchase of the stock, each object being a consideration for the other. An oral contract by which the vendor sells his own goods for more than fifty dollars, payment and delivery being made, and agrees to take them back from, and repay the vendee the purchase price on demand, is an entire contract, and the promise to take back the property and repay the purchase price does not fall within the statute of frauds relating to the sale of personal property.—*Johnson v. Trask*, 116 N. Y. 136.

According to the undisputed facts, plaintiff, by his first cause of action, was entitled to the return of his Omar stock or its value, at the time he demanded its return, and also judgment for the amount he paid to discharge his note. Under his second cause of action he was entitled to judgment for the amount paid to discharge his note less any dividends received on the Exploration stock.

The judgment of the district court is reversed and the cause remanded, with directions to hear such further testimony offered by either party as may be necessary to ascertain the facts upon which to base a judgment in favor of plaintiff, in accordance with the views expressed in this opinion.

*Reversed and remanded with directions.*

Chief Justice Steele and Mr. Justice Campbell concur.